IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 3, 2018

**STATE OF TENNESSEE v. ANDREW DE BOSE-MABEN**

**Appeal from the Criminal Court for Shelby County**
No. 15-04100          Chris Craft, Judge

————————————————————

**No. W2017-00969-CCA-R3-CD**

————————————————————

Andrew De Bose-Maben ("the Defendant") was convicted by a Shelby County jury of aggravated robbery, for which the trial court imposed a sentence of nine years to serve in the Department of Correction.[1] On appeal, the Defendant contends that the trial court abused its discretion by allowing the State to question the victim about his interaction with the Defendant during a recess at trial. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Andrew De Bose-Maben.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 2, 2015, Howard Boxley ("the victim") was walking home when two young men in a gold Malibu approached him. The man in the passenger seat of the vehicle pointed a shotgun at the victim and demanded that the victim give him everything in his pockets. When the victim responded that he did not have anything in his pockets, the man demanded his Dallas Cowboy's watch. The victim complied and gave the man

---

[1] The Defendant was indicted and tried with a co-defendant, Demarcus Kerr. However, co-defendant Kerr's case is not a part of this appeal.

his watch, and the two men drove away. The victim chased after the car in order to see the tag number, and then he called 911 and provided the dispatcher the tag number, the make and model of the car, and a general description of the assailants and the shotgun. The victim said that the driver of the car was "dark-skinned" and that the passenger was "light-skinned," but he was unable to provide further details because he had been focused on the shotgun.

Minutes after the robbery, officers with the Memphis Police Department located the Defendant and co-defendant Kerr driving the gold Malibu suspected in connection with the robbery. Officers also found the victim's stolen watch inside the pocket of the front passenger door and a sawed-off shotgun similar to that described by the victim as being used in the crime. Additionally, they found an envelope addressed to the Defendant inside the vehicle. The officers arrested both the Defendant and co-defendant Kerr. Upon questioning, both defendants gave statements admitting to their participation in the robbery. The Defendant admitted that he pointed the unloaded shotgun at the victim, and co-defendant Kerr admitted that he was driving the gold Malibu during the robbery.

In August 2015, the Shelby County Grand Jury indicted the Defendant and co-defendant Kerr with two counts of aggravated robbery based on this offense. Following a trial, the jury found the Defendant guilty as charged.[2] Following a sentencing hearing, the trial court sentenced the Defendant, as a Range I standard offender, to nine years' incarceration. The Defendant then filed a timely motion for new trial, which was denied following a hearing. This timely appeal follows.

## Analysis

On appeal, the Defendant contends that the trial court abused its discretion by allowing the State to question the victim regarding his interaction with the Defendant during a lunch recess at trial. The State responds that the trial court did not abuse its discretion. We agree with the State.

Generally, "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [c]ourt will not interfere in the absence of abuse appearing on the face of the record." *State v. Plyant*, 263 S.W.3d 854, 870 (Tenn. 2008). A trial court abuses its discretion when it "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Id.* (citing *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

---

[2] The State later entered a nolle prosequi to Count 2 of the indictment, which charged an alternative theory of the aggravated robbery.

This discretion extends to the scope of redirect examination. *State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) ("The admissibility of testimony and other evidence, as well as the scope of redirect examination, is within the discretion of the trial court, whose ruling will not be reversed absent an abuse of that discretion."). Thus, for example, a trial court has discretion to allow a party to use redirect examination to "supply testimony omitted by oversight" during the direct examination. *State v. Barnard*, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994). A trial court also has "discretion to permit the witness on redirect to testify about new facts that were not mentioned on direct or cross-examination." *State v. Clayton*, 535 S.W.3d 829, 861 (Tenn. 2017) (quoting *State v. Danny Owens,* No. M2012-02717-CCA-R3-CD, 2014 WL 1173371, at *19 (Tenn. Crim. App. Mar. 24, 2014), *perm. app. denied* (Tenn. Sept. 25, 2014)) (internal quotation marks omitted). Moreover, our supreme court has stated that a trial court has the discretion to allow a party to recall a witness to the stand and may "permit the [S]tate to reopen its proof, so long as there is no prejudice to the defendant." *State v. James*, 315 S.W.3d 440, 460 (Tenn. 2010).

During the Defendant's trial, the victim was asked, on direct examination, if he could identify the assailants in the courtroom, but the victim was unable to do so. After the State finished its direct examination of the victim, the trial court allowed the jury to recess for lunch before defense counsel began their cross-examinations of the witness. After lunch, but before the jury entered the courtroom, the prosecutor informed the trial court that he had seen the Defendant talking with the victim during the lunch recess. The victim was called to the stand for a jury-out hearing in order for him to testify as to what was said during the encounter with the Defendant. The victim testified that, during the recess, the Defendant approached him to apologize for his actions. The victim stated that the Defendant did not attempt to threaten or intimidate him. Although the victim was startled by the conversation, he stated that he was not scared and that the Defendant's apology "opened up a little spot in [his] heart." Based on this testimony, the State asked the trial court to revoke the Defendant's bond; however, the trial court determined that there was no basis to revoke bond. When the jury returned to the courtroom, co-defendant Kerr's counsel proceeded to cross-examine the victim but did not question the victim about the Defendant's apology. The Defendant's counsel did not ask the victim any questions.

On redirect examination, the State began to ask the victim about the Defendant's interaction with him during the lunch recess, and defense counsel objected. At a bench conference, defense counsel argued that the State's inquiry exceeded the scope of direct and cross-examination and that the question should have been asked by the State before cross-examination began. The trial court noted that the State could not have asked about the interaction during its direct examination because the interaction had not taken place

yet but ruled that defense counsel could conduct a recross-examination. The court further held it was not improper to proceed with defense cross-examination first because that is what the trial court had explained to the jury they would do after lunch. The trial court allowed the State's questions "under the circumstances of this case." Then, in response to the State's questions, the victim explained that the Defendant approached him during the lunch recess and apologized. On recross-examination by the Defendant's counsel, the victim stated that the Defendant appeared sincere and was not threatening.

Upon review, we conclude that the trial court acted within its discretion when it allowed the State to question the victim about his encounter with the Defendant during lunch. The trial court was confronted with an unusual circumstance of the Defendant's apologizing to the victim during a lunch recess after the State had completed its direct examination of the victim. The Defendant's apology to the victim was certainly relevant, but as noted by the trial court, the prosecutor could not have known about it until it happened. Whether the State should have elicited the victim's testimony about the encounter by reopening its direct examination, by bringing it out on redirect examination, or by recalling the victim at another point in the trial was a matter left to the trial court's discretion.

The Defendant asserts that the State's questioning of the victim on redirect examination caused an injustice to the Defendant "based on an inference that could have been drawn by the jury . . . that [the Defendant] is an opportunist that would possibly risk his bond getting revoked if the factfinder were to determine that he initiated contact with [the victim] in an attempt to harass or threaten [the victim]." However, the victim testified that the Defendant's apology seemed sincere and that the Defendant was not threatening him, and there was no testimony about the possibility of the Defendant's bond being revoked. The Defendant further argues that "the State did not gain any substantive benefit to its case based on [the victim's] testimony on redirect" and that the testimony merely served to prejudice the Defendant "in an unfair and patently avoidable manner." As noted by the State in its brief, "if the State did not gain any benefit from the testimony, there is no prejudice to [the Defendant]." In any event, the State did benefit from the victim's testimony because the fact that the Defendant apologized to the victim helps to establish the Defendant's identity as the perpetrator of the crime and supports the conclusion that the Defendant is guilty of the offense. *See, e.g., State v. Harry David Johnson,* No. 03C01-9712-CR-00526, 1999 WL 318830, at *9 (Tenn. Crim. App. May 17, 1999) ("The defendant's guilt of a May 1995 assault is suggested by [a witness's] testimony that he apologized and told the family it would not happen again."), *perm. app. denied* (Tenn. Sept. 11, 2000).

The trial court acted within its discretion by allowing the State to question the victim on redirect examination about the Defendant's apology during the lunch recess.

- 4 -

Moreover, any error would be harmless based on the overwhelming evidence against the Defendant. The Defendant is not entitled to relief on this claim.

## **Conclusion**

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE