# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 5, 2010 Session

## STATE OF TENNESSEE v. RALPHELLE JAMES

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**No. 265412      Barry A. Steelman, Judge**

**No. E2008-01493-SC-R11-CD - Filed June 24, 2010**

The defendant, a Range I offender, was found guilty of public intoxication, theft of property over $1,000, and aggravated burglary. The trial court imposed concurrent sentences of thirty days for the misdemeanor and four years for the felony theft; because the six-year sentence for aggravated burglary is to be served consecutively, the effective sentence is ten years. The Court of Criminal Appeals affirmed. This Court granted the defendant's application for permission to appeal to consider the propriety of instructions to the jury permitting inferences of both theft and burglary from the possession of recently stolen property. A second issue is whether the trial court erred by failing to grant a motion for judgment of acquittal as to the charge of aggravated burglary for insufficient evidence. As his final issue, the defendant contends that the trial court erred by allowing the State to further examine a defense witness after jurors had submitted questions pursuant to rule. Because the instructions were proper, the evidence was sufficient to support the verdict on the burglary charge, and the procedure utilized for juror questions was compliant with the rule, the judgment of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellant, Ralphelle James.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; William H. Cox, III, District Attorney General; and Boyd Patterson and C. Matthew Rogers, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### Factual and Procedural History

At 6:00 or 6:30 a.m. on July 3, 2007, the victim, Maxine Bailey, who lived alone in a two-story residence on Glenwood Drive in Chattanooga, awoke to find that her laptop computer was missing. Her car keys and $100 cash had been taken from her pocketbook. When she looked outside, she discovered that her white 1998 Toyota RAV4 had been stolen. The title to the vehicle was in the glove compartment. Apparently, sometime after 10:30 p.m. on the evening before, a burglar had gained access through a window in a rarely used first story room. When Chattanooga Police Detective Jeff Bryden investigated, he examined the exterior of the residence, including the window that had been opened. No latent fingerprints were found. The detective entered the vehicle identification number into the National Crime Information Center database and reported the serial number of the computer to the police department's "pawn unit." Neither the computer nor the cash was ever recovered.

Sometime during the regular business hours of TitleMax, between 9 a.m. and 6 p.m. on the same day the burglary was reported, Ralphelle James (the "Defendant") applied for a cash loan of $2,500, offering the stolen Toyota as collateral. A man, who identified himself as Darrell Goodlow and who claimed that he shared a residence with the Defendant, was present and jointly applied for the loan. Handwriting on the back of the title that the Defendant presented to Twanda Lyons, the TitleMax assistant manager, indicated that he had purchased the vehicle from the victim for $1,200 on May 10, 2007, almost two months before the burglary. Before approving the loan, Ms. Lyons received proof of identity from the Defendant and verified both his address and his employment. Further, she required the Defendant to apply for a new certificate of title with the Hamilton County Clerk's office, which closed at 4:30 p.m. Because the price listed on the title was less than seventy-five percent of the estimated $3,200 value, the Defendant, while at the clerk's office, had to explain by affidavit why the sale price was so low. The Defendant described himself as "a family friend" of the victim even though he did not, in truth, know her. A signature purporting to be that of the victim appeared on the affidavit. The content of the affidavit included an oath verifying its accuracy under penalty of perjury. Later in the day, when the Defendant returned to TitleMax with his application for a title, the loan was closed. On July 6, some three days after the application for new title, the clerk's office received notice that the car had been stolen.

On July 10, one week after the loan transaction, Chattanooga Police Officer John Patterson, who had a description of the stolen car, observed the Defendant driving a white Toyota RAV4 within a mile of the victim's residence. The officer followed the Defendant for about half a block until he drove into an apartment complex parking lot, parked the vehicle, and then walked out of sight. After determining that the tags were in the name of the Defendant, Officer Patterson, still suspicious because the car matched the description of

the victim's Toyota, recorded the vehicle identification number and confirmed by computer that the car had been stolen. When the officer found the Defendant only a short distance away, the Defendant smelled of alcohol, had an unsteady gait, and appeared to be intoxicated.

After being arrested, handcuffed, and advised of his rights, the Defendant claimed to the officer that he had legitimately purchased the car. He explained that, on July 3, he had paid $1,200 cash for the vehicle to a woman claiming to be "Ms. Bailey." He was unable to immediately provide more specific information to the officer as to the time and place of the purchase. Later, at the preliminary hearing, the Defendant testified that the woman had "flagged [him] down" during daylight hours at the corner of Main and Dodds Streets and asked him if he wanted to buy a car. The Defendant stated that the woman, who appeared to be under the influence of drugs, was approximately five feet two inches tall and blond with blue eyes. He testified that he gave the woman $1,200 cash and she signed the certificate of title in his presence.

Although the Defendant did not testify at trial, his girlfriend for over five years, Kathryn Williams, appeared as a defense witness. She testified that the Defendant lived with her and her parents on Germantown Road in Chattanooga at the time of the burglary. She claimed that he had arrived at their apartment between midnight and 1 a.m. on July 3, 2007, and stated that later that morning, she drove the Defendant to a location on Main Street. Ms. Williams stated that when the Defendant returned to her residence between 1 a.m. and 2 a.m. the following morning, July 4, he informed her that he had received "a blessing," having purchased a car from a woman on Main Street for $1,200. She also testified that Darrell Goodlow was the name of her mother and explained that because they were together all day on July 3, her mother could not have been with the Defendant at the time of the TitleMax loan closing. Ms. Williams, who first saw the vehicle on July 4, one day after the title transfer, stated that the Defendant was gainfully employed, was always paid in cash, and did not maintain a bank account.

At the conclusion of the trial, the jury returned verdicts of guilt for public intoxication,[1] theft of property valued at $1,000 or more, and aggravated burglary. The trial court imposed an aggregate sentence of ten years. On appeal, the Court of Criminal Appeals affirmed each of the convictions.

In the application for permission to appeal to this Court, the Defendant first contended that the trial court erred by providing instructions that the jury could permissibly infer theft by the possession of recently stolen property and, upon determining that the Defendant had committed the theft, could also infer that he had committed a burglary. Secondly, the

---

[1] The Defendant chose not to appeal his conviction for public intoxication.

Defendant argued that the trial court should have granted a judgment of acquittal on the charge of aggravated burglary based upon insufficient evidence, contending that the State had failed to exclude the equally plausible hypothesis that he was merely in possession of stolen property and was not the burglar. As his final issue, the Defendant questioned the procedure used by the trial court while it permitted witnesses to be asked questions written by the jurors. The primary reasons we granted permission to appeal were to consider the propriety of the instructions relating to recently stolen property and to determine whether the evidence, entirely circumstantial as to the aggravated burglary, was sufficient to support the verdict.

## Analysis
### I. Jury Instructions

Preliminarily, the trial court has the duty to provide a "complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30(d)(2). As to the scope of appellate review, "pattern jury instructions are not entitled to any particular deference." State v. Rimmer, 250 S.W.3d 12, 30 (Tenn. 2008). "Jury instructions must be reviewed in their entirety. Phrases may not be examined in isolation." Id. at 31 (citations omitted). Trial courts are not limited to the mere recitation of the pattern instructions. State v. West, 844 S.W.2d 144, 151 (Tenn. 1992). A charge "is erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). In order to determine whether a conviction should be reversed on the basis of an erroneous instruction to the jury, this Court "must consider 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Rimmer, 250 S.W.3d at 31 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).[2]

During the trial, the State asked the court to instruct the jury that "[t]he defendant's possession of recently stolen goods creates an inference that the defendant has stolen them, as well as committed the burglary antecedent to the theft." The Defendant objected. After

___

[2] The Defendant objected to the instruction. He also filed a motion for new trial challenging the inference instruction as to aggravated burglary. An erroneous or inaccurate jury charge is not waived by the failure to make a contemporaneous objection and may be presented for the first time in a motion for a new trial. State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005); State v. Lynn, 924 S.W.2d 892, 898-99 (Tenn. 1996). Rule 30(b) of the Tennessee Rules of Criminal Procedure confirms that failure to make an objection to the content of an instruction "does not prejudice the right of a party to assign the basis of the objection as error in a motion for new trial." Tenn. R. Crim. P. 30(b). "This rule is identical to Rule 51.02 of the Tennessee Rules of Civil Procedure which has long been interpreted as allowing a challenge in the motion for new trial for positive errors in the instructions," as opposed to an error of omission, regardless of whether an objection was lodged. Lynn, 924 S.W.2d at 899; see also Rule v. Empire Gas Corp., 563 S.W.2d 551, 553-54 (Tenn. 1978); State v. Haynes, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986).

-4-

pointing out that the Defendant could not automatically be found guilty of burglary based upon the possession of recently stolen property, the trial court, at the conclusion of the proof, provided the following instructions as to the permissibility of inferences in relation to charges of theft and aggravated burglary:

> Inferences from possession of recently stolen property: If you find beyond a reasonable doubt from the evidence that the property in question had been recently stolen, and that soon thereafter the same property was discovered in the exclusive possession of the defendant, or that the defendant was in joint possession of the stolen property, this possession, unless satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw an inference that the defendant gained possession through theft or had knowledge that the property had been stolen.

> Furthermore, if you find beyond a reasonable doubt from the evidence that the defendant gained possession of the property in question through theft, and you also find beyond a reasonable doubt that the theft could only have been accomplished through aggravated burglary or burglary, you may also reasonably draw an inference that the defendant committed such aggravated burglary or burglary; however, you are never required to make either inference. It is for you to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you to draw from the possession of recently stolen property.

> When the evidence is offered that the defendant was in possession of recently stolen property, the defendant has the right to introduce evidence that he came into possession of the property lawfully, or possession may be satisfactorily explained through other circumstances or other evidence independent of any testimony or evidence offered by the defendant.

> In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional rights, the accused need not take the witness stand to testify.

> The term "recently" is a relative term and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may be drawn from unexplained possession.

The correctness of the inference and the weight to be given any explanation that may be shown by the evidence are matters that must be determined by you, and you are not bound to accept either. You must weigh all the evidence presented as to the defendant's alleged possession of the property in question, and decide, in light of all the facts and circumstances present, whether any inference is warranted.

This language was taken from a section of the most recent edition of the Tennessee Pattern Jury Instructions. T.P.I.–Crim. 42.20 (12th ed. 2008).

In this appeal, the Defendant argues that this instruction, while based upon the pattern instructions, erroneously "invaded the province of the jury, superadded the inference [of burglary] without evidence, and deprived [the] defendant of a fair trial." The Defendant warns that an unjust verdict could be rendered absent instructions that the jury must find some corroboration of burglary, even if *de minimis*.[3] In support of this contention, the Defendant quotes from the dissent by Justice William O. Douglas in Barnes v. United States, 412 U.S. 837, 850 (1973) (Douglas, J., dissenting): "[t]he use of presumptions and inferences to prove an element of the crime is indeed treacherous, for it allows men to go to jail without any evidence on one essential ingredient of the offense. It thus implicates the integrity of the judicial system."

The Due Process Clause of the Fourteenth Amendment protects "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged." In re Winship, 397 U.S. 358, 364 (1970); see also Francis v. Franklin, 471 U.S. 307, 313 (1985).[4] This protection places limits on jury instructions that make "the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated," in that there must be "a rational connection between the facts proved" and the conclusion reached. Tot v. United States, 319 U.S. 463, 467 (1943). "[I]t is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the

---

[3] As to the burglary, the Defendant also argues that the trial court should have charged the jury, as an alternative to the burglary inference, that they could also infer that he had merely possessed the property with knowledge it was stolen. In the event of an omission or an otherwise incomplete instruction to the jury, as opposed to an erroneous one, a party has the duty to seek a supplemental charge, or else waives the issue. Faulkner, 154 S.W.3d at 58 (citing Lynn, 924 S.W.2d at 898-99). In this instance, however, the Defendant did not make any special requests for instructions or seek any supplemental charge.

[4] "The phrase, 'the law of the land,' used in [article I, section 8] of our State Constitution, and the phrase, 'due process of law,' used in the Fifth Amendment and in the first section of the Fourteenth Amendment to the Constitution of the United States, are synonymous phrases meaning one and the same thing." State v. Hale, 840 S.W.2d 307, 312 (Tenn. 1992).

offense, the occasion of casting on the defendant the obligation of exculpation." Id. at 469.[5]
An inference is arbitrary, and thus unconstitutional, unless there is "substantial assurance"
that the inferred conclusion "is more likely than not to flow from the proved fact on which
it is made to depend." Leary v. United States, 395 U.S. 6, 36 (1969); see also Turner v.
United States, 396 U.S. 398, 404-05 (1970); United States v. Gainey, 380 U.S. 63, 66-67
(1965). The rational connection between the circumstances giving rise to the inference and
the conclusion drawn satisfies constitutional safeguards. See County Court of Ulster County
v. Allen, 442 U.S. 140, 165 (1979); cf. People v. Galbo, 112 N.E. 1041, 1044 (N.Y. 1916).

In Barnes, cited by both the Defendant and the State, the Supreme Court, applying the
test established in Tot, upheld the common law notion that proof of the possession of recently
stolen property created a permissive inference of guilty knowledge that was compliant with
the reasonable doubt standard and due process of law. 412 U.S. at 846. Barnes, after
opening a checking account in the name of "Clarence Smith," deposited four checks which
had been mailed by the U.S. Treasury to four different individuals. Each check bore the
endorsements of the payee and "Clarence Smith." Barnes claimed that he had received the
checks from individuals he had employed to sell furniture door-to-door. He asserted that the
checks had the signatures of the payees at the time of receipt. Barnes admitted signing the
name "Clarence Smith" and depositing the checks, but he denied forging the endorsements
of the payees. Id. at 838-39. Nevertheless, the Court upheld the convictions, finding that the
jury could properly infer from the proof knowledge that the checks were stolen. Id. at 845-
46. Further, the Court rejected the claim that the permissive inference abridged the right of
self-incrimination. Because the trial court had instructed the jury that Barnes had a right not
to testify and that possession might otherwise be satisfactorily explained by other means or
through other witnesses, there was no violation of the privilege against self-incrimination.
Id. at 846-47; see also Yee Hem v. United States, 268 U.S. 178, 185 (1925).

Shortly after the 1973 ruling in Barnes, this Court granted review in two cases, Bush
v. State, 541 S.W.2d 391 (Tenn. 1976), and Turner v. State, 541 S.W.2d 398 (Tenn. 1976),
in order to address whether, in view of the Supreme Court decisions on the subject, a
presumption or inference might be properly drawn from evidence of possession of recently
stolen property. The three defendants in Bush were convicted of burglary based upon their
possession of three rifles and a shotgun stolen in a residential burglary. At the conclusion

---

[5] Inferences from recently stolen property have a long history and widespread acceptance. See
Dunlop v. United States, 165 U.S. 486, 502 (1897) ("[I]f property recently stolen be found in the possession
of a certain person, it may be presumed that he stole it . . . ."); see also McNamara v. Henkel, 226 U.S. 520,
524-25 (1913) (holding that possession of the fruits of a burglary tend to show participation in the burglary);
Wilson v. United States, 162 U.S. 613, 619 (1896) ("Possession of the fruits of crime, recently after its
commission, justifies the inference that the possession is guilty possession . . . .").

of the proof, the charge to the jury was as follows:

> Recent possession of personal property proven to have been stolen, unexplained, is plenary proof of guilt. It creates a strong presumption of guilt and in the absence of explanation, if in the power of the defendant or defendants to explain, must necessarily make evidence of guilty possession stronger. In fact, the recent possession of stolen articles under these circumstances, would not merely be a strong circumstance, but raise a presumption of guilt upon which the jury should convict.

Id. at 398. This Court ruled that the "mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury on the inference." Id. at 395 (quoting Barnes, 412 U.S. at 845 n.9). "Thus, . . . the circumstantial force of the inference does not 'vanish' upon the . . . defendant's explanation." Id. Justice Fones, writing on behalf of the Court, declared the holding in Bush as "consistent with Barnes v. United States." Id. Because, however, the trial court had instructed that the recent possession of stolen articles would "raise a presumption of guilt from which the jury should convict," rather than merely creating a permissible inference, new trials were ordered. Id. at 398.

Because the convictions in Bush were for burglary rather than for theft, the case has been cited as authority that possession of recently stolen property creates a permissible inference, not only of theft, but also of burglary.[6] In Turner, the companion case to Bush, the Court held as constitutional error, but harmless beyond a reasonable doubt in context, instructions that the possession of recently stolen property without explanation "raises the presumption of guilt." 541 S.W.2d at 401. The Court further observed as follows:

> In Bush . . . we have eliminated any vestige of conclusiveness in the application of the presumption or inference whether the fact sought to be inferred is guilty knowledge that the property was stolen or that the possessor was the thief. In that opinion, we believe that we have modified the use and application of the inference so that it will conform fully with the requirements of Barnes v. United States and prior United States Supreme Court cases discussed therein.

---

[6] Since Bush, our courts have approved instructions to the effect that unsatisfactorily explained possession of recently stolen goods may be sufficient, in and of itself, to sustain a burglary conviction. See State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also State v. Robinson, No. W2002-00601-CCA-R3-CD, 2003 WL 21338970, at *4 (Tenn. Crim. App. May 28, 2003); State v. Hamilton, 628 S.W.2d 742, 746 (Tenn. Crim. App. 1981).

Id. at 402 (citation omitted).

Because a mandatory presumption shifts the burden of persuasion to a defendant, a due process violation results. Patterson v. New York, 432 U.S. 197, 215 (1977); State v. Pickett, 211 S.W.3d 696, 703 (Tenn. 2007). Generally speaking, "a permissive inference is not a violation of due process because the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved." Estelle v. McGuire, 502 U.S. 62, 78-79 (1991) (O'Connor, J., concurring & dissenting); see also Lowe v. State, 805 S.W.2d 368, 371-72 (Tenn. 1991). Typically, a "permissive inference allows, but does not require, the triers of fact to infer the elemental fact from proof by the State of the basic fact and places no burden of any kind on the defendant." State v. Bolin, 678 S.W.2d 40, 42 (Tenn. 1984); see also State v. Hatchett, 560 S.W.2d 627, 629 (Tenn. 1978) ("An unsatisfactorily explained possession of very recently stolen property may, in the light of surrounding circumstances, support a conviction of larceny, as well as supply the element of guilty knowledge for the offenses of receiving stolen property or concealing stolen property.").

While the Defendant urges this Court to abandon instructions permitting an inference of theft from possession of recently stolen property, the overwhelming weight of authority is to the contrary. The inference that a possessor of stolen goods "has *knowledge of their stolen quality* . . . is much more widely accepted without qualification or corroborating evidence" than is the inference that the possessor actually committed the theft "because the inference of mere knowledge is a much more likely one." Cosby v. Jones, 682 F.2d 1373, 1381 (11th Cir. 1982).[7]

The inference of guilty knowledge permitted by the possession of recently stolen property predates our current theft of property statute, Tenn. Code Ann. § 39-14-103 (2006), which was enacted in 1989. See, e.g., State v. Veach, 456 S.W.2d 650, 651-52 (Tenn. 1970); Tackett v. State, 443 S.W.2d 450, 451 (Tenn. 1969); Peek v. State, 375 S.W.2d 863, 865 (Tenn. 1964). Before the 1989 Act, larceny was defined as "the felonious taking and carrying away the personal goods of another." Tenn. Code Ann. § 39-3-1101 (1982). In 1989, larceny and other offenses were consolidated into a single offense, see Tenn. Code Ann. § 39-14-101 (2006), and "theft of property" was defined in terms of knowingly obtaining or exercising control over property without the owner's consent and with the intent

---

[7] See also Barfield v. United States, 229 F.2d 936, 942 n.1 (5th Cir. 1956) (Brown, J. concurring) ("[T]he total circumstances must furnish a legitimate basis for such an inference . . . ."); id. at 944 n.6 (observing that those cases sustaining convictions "show on careful examination some additional circumstances").

to deprive the owner of the property. Tenn. Code Ann. § 39-14-103. There is no difference between the actual larceny and either receiving or concealing the stolen property.[8] Thus, the inference of knowledge that the property was stolen from the possession of recently stolen property is particularly suited to our current statute,[9] and, in our view, the instruction by the trial court was proper as to the theft.[10]  Cf. Jones v. Kemp, 678 F.2d 929, 930-31 (11th Cir.

---

[8] As to theft, there is general acceptance of the inference, perhaps because many jurisdictions, like Tennessee, do not distinguish between larceny and the knowing receipt of stolen property; therefore, there is little need to infer specific commission of the larceny.  See United States v. Jones, 418 F.2d 818, 824 n.9 (8th Cir. 1969).

[9] Prior to 1989, the receiving and the concealing of stolen goods were separate offenses:

(a) Every person who shall fraudulently receive or buy any goods over the value of two hundred dollars ($200), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of receiving stolen property over the value of two hundred dollars ($200).

(b) Every person who shall fraudulently conceal or aid in concealing any goods over the value of two hundred dollars ($200), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of concealing stolen property over the value of two hundred dollars ($200).

Tenn. Code Ann. § 39-3-1112 (1982).

[10] In People v. Baskerville, 457 N.E.2d 752 (N.Y. 1983), the high court of New York explained as follows:

[T]he charge to the jury must be tailored to the facts of the particular case.  If a defendant is found in exclusive possession soon after the crime and there is no evidence indicating that he may have received the stolen property from someone else, the only inference that can be drawn is that defendant is the thief.  In such a case the charge here given would not be error, though even in such a case the Trial Judge retains discretion not to invoke the Common-law inference, lest undue emphasis be given to a point within the common sense and experience of the average juror.

At the other end of the spectrum are theft cases in which possession is so far removed in time from the taking or the evidence of shared rather than exclusive possession so strong that no inference instruction would be proper.  Between those two extremes fall cases such as the present in which there is evidence from which the jury could conclude that defendant was the thief, but there is also a reasonable view of the evidence under which the jury could find that defendant acquired possession after the theft.  In such a case the jury must be charged that if they find that defendant had possession of recently stolen property

(continued...)

-10-

1982) (affirming jury charge where, under the Georgia theft statute, "proof of unexplained possession of recently stolen property, without proof of scienter, is not sufficient to support a conviction of that crime").

The burglary instruction presents a more difficult issue. "Inferring that [a possessor] of the goods stolen actually entered the victim's [residence] and stole the goods is a great deal more specific . . . ." Cosby, 682 F.2d at 1381. Typically, however, when a burglary was committed, personal property was taken during the burglary, that personal property is found in the exclusive possession of the accused shortly after the burglary, and the accused falsely states how he came into possession of the stolen property, a number of cases, as indicated, permit the trier fact to infer that the accused (1) committed the burglary and (2) took the personal property from the situs of the burglary. Capps v. State, 523 S.W.2d 213, 215-16 (Tenn. Crim. App. 1974); Wyatt v. State, 467 S.W.2d 811, 814-15 (Tenn. Crim. App. 1971); Pruitt v. State, 460 S.W.2d 385, 392 (Tenn. Crim. App. 1970). The inference instruction has been upheld in other jurisdictions as well when the defendant's possession of the stolen property is not too remote in time from the burglary and is personal, exclusive, and unexplained. See, e.g., Ward v. State, 658 S.W.2d 379, 380-81 (Ark. 1983); State v. Brown, 744 S.W.2d 809, 811 (Mo. 1988); State v. Capraro, 291 S.W.3d 364, 366 (Mo. Ct. App. 2009).

---

[10](...continued)
for the possession of which he has offered no explanation or an explanation which they find to be untrue, they may, although they are not required to, infer that defendant was guilty of a crime and must then weigh the evidence before them to determine whether it establishes beyond a reasonable doubt that the defendant participated in the theft of the property or received it after it was stolen with knowledge of that fact.

Id. at 757 (citations omitted).

Justice Benjamin Cardozo wrote that under circumstances such as these,

There remains the question of the nature of [the] offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? . . . [I]f nothing more is shown, we may take him to be the thief. But as soon as evidence is offered that the theft was committed by some one else, the inference changes, and he becomes a receiver of stolen goods. Sometimes the circumstances may make it proper for a jury to say which inference is the true one. Learned commentators have said that in many cases the wrong inference has been drawn. . . .

The problem is a hard one. To solve it we must steadily bear in mind that the inference of guilt to be drawn from possession is never one of law. It is an inference of fact.

Galbo, 112 N.E. at 1044 (citations omitted).

A number of courts, however, have rejected the notion that exclusive and unexplained possession of recently stolen property is sufficient in and of itself for a conviction of burglary. See, e.g., Bankston v. State, 309 S.E.2d 369, 370 (Ga. 1983) (holding that "proof of recent unexplained possession of stolen goods is not automatically sufficient to establish burglary," but rather is probative evidence that may, together with other evidence, support a conviction); People v. Housby, 420 N.E.2d 151, 155 (Ill. 1981) ("[E]xclusive and unexplained possession of recently stolen property . . . standing alone does not prove burglary beyond a reasonable doubt. The person in exclusive possession may be the burglar, to be sure, but he might also be a receiver of stolen property, guilty of theft but not burglary, an innocent purchaser without knowledge that the item is stolen, or even an innocent victim of circumstances."); Giles v. State, 320 N.E.2d 806, 808 (Ind. Ct. App. 1974) (determining that the "[u]nexplained exclusive possession of recently stolen goods . . . may support a conviction of . . . burglary where other evidence is adduced to link the defendant with the crime"); see also State v. Lewis, 242 N.W.2d 711, 719-23 (Iowa 1976) (citing cases); Jones v. State, 468 P.2d 805, 807 (Okla. Crim. App. 1970); Commonwealth v. Simmons, 336 A.2d 624, 627-28 (Pa. Super. Ct. 1975). A careful review of this line of cases and other authorities on the subject leads us to the conclusion that the better rule is to permit the jury to infer a burglary from possession of recently stolen property only when there exists a rational connection between possession and participation, when guilt more likely than not flows from possession, and, importantly, when there is some other evidence corroborating the burglary that warrants the inference. See 13 Am. Jur. 2d Burglary § 48 (2009).[11] While the Court of Criminal Appeals correctly applied Jackson v. Virginia, 443 U.S. 307 (1979), as to the sufficiency of the evidence issue, trial courts should not be allowed to instruct juries that the unsatisfactorily explained possession of recently stolen goods, in and of itself, may be sufficient to sustain a burglary conviction. To its credit, the trial court in this instance did not approve of the instruction sought by the State and, instead, required the jury "to determine whether the facts and circumstances shown by the evidence in this case

---

[11] In Shields v. State, 702 So.2d 380 (Miss. 1997), the Mississippi Supreme Court stated that the inference of participation in a crime from possession of stolen property depends upon the facts of the case. The court listed common sense factors as follows:

1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;
3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.

Id. at 383.

warrant[ed] any inference" of a burglary.  Further, the jury was permitted to consider the credibility of the explanation, or lack thereof, from all of the proof presented in making that determination.

In 2 Wharton's Criminal Law & Procedure section 411 (1st ed. 1957), the governing rule is stated as follows:

> While the possession of recently stolen goods gives rise to an inference that the possessor has stolen the goods, it is not ordinarily proof or prima facia evidence of burglary.  <u>There should be some evidence of guilty conduct besides the bare possession of the stolen property, before the inference of burglary be superadded to that of larceny.  However, such possession is evidence which may be considered with all other circumstances of the case as bearing on the question whether the defendant committed the burglary</u>, and there is authority that if the possession is unexplained it may support the conclusion of guilt of burglary.

(Emphasis added.); <u>see also</u> <u>Pruitt</u>, 460 S.W.2d at 392.

At 13 Am. Jur. 2d <u>Burglary</u> section 48, the rule is stated as follows:

> A defendant's possession of recently stolen property is sufficient to support a burglary conviction if there is a rational connection between his or her recent possession of property stolen in the burglary and his or her participation in the burglary; the defendant's guilt of burglary more likely than not flows from his or her recent, unexplained possession of the burglary proceeds, and there is evidence corroborating the defendant's guilt. Moreover, once it is shown that goods were stolen in a burglary, the absence of or an unsatisfactory explanation of the possession of the goods will support a conviction for burglary based on recent possession of the stolen goods; whether a defendant's explanation of possession is satisfactory is a question for the jury, and so is the lack of an explanation.
>
> . . . . However, the mere possession of recently stolen goods does not constitute prima facie evidence of an unlawful entry by the possessor.
>
> Where a burglary defendant tenders an explanation for his or her possession of recently stolen property, the State must prove it false or unreasonable; proof of conflicting explanations provides an adequate basis upon which to deem the defendant's explanations false or unreasonable.

(Footnotes omitted.)

As stated, the jury was charged to consider whether the Defendant's recent possession of stolen property was "satisfactorily explained," so as to negate the inference of guilty knowledge required to support a conviction of theft. None of the circumstantial evidence was inconsistent with the logical inference that the Defendant was guilty of the theft offense, either as a knowing receiver of the stolen goods or as a participant in the taking of the items. As to the burglary count, the jury was properly instructed to initially determine beyond a reasonable doubt whether the Defendant was guilty of theft under our statutory scheme, and, if so, whether the other "facts and circumstances" presented during the trial warranted the inference of burglary as well.[12] The trial court might have improved the instructions by specifically using the term "corroboration" in conjunction with the "facts and circumstances" language in requiring substantiation of the inference; that is, by requiring some evidence that the Defendant was the actual burglar and not merely a knowing possessor of the stolen property. But the Defendant did not make such a request, as is required, in order to preserve for appeal an omission in the instructions. See Faulkner, 154 S.W.3d at 58.[13]

---

[12] That the cash and the computer were not found in his possession supported the theory that he was not the burglar, but the keys to the car, also taken from the pocketbook located inside the residence, were in the Defendant's possession on the day following the night-time burglary. The implausible explanation to the arresting officer may serve as corroboration. So may the false statements made on the motor vehicle document, the Defendant's account of the purchase of the vehicle, and other actions inconsistent with innocence.

[13] While the use of the pattern instructions were appropriate in this case, we also see wisdom in the selection of the California Pattern Instructions, which can apply equally to theft, burglary, or robbery (depending, of course, on the offense at issue):

If you find that a defendant was in [conscious] possession of recently [stolen] . . . property, the fact of that possession is not by itself sufficient to permit an inference that the defendant . . . is guilty of the crime of _____. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.

As corroboration, you may consider [the attributes of possession—time, place and manner,] [that the defendant had an opportunity to commit the crime charged,] [the defendant's conduct,] [[his] [her] false or contradictory statements, if any,] [and] [or] [other statements [he] [she] may have made with reference to the property] [a false account of how [he] [she] acquired possession of the stolen property] [any other evidence which tends to connect the defendant with the crime charged].

Cal. Jury Instructions–Crim 2.15 (2010); see People v. Anderson, 210 Cal. App. 3d 414, 425-32 (4th Dist.

(continued...)

Instructions, in any event, must be assessed in context rather than in isolation, and, as a part of the burglary instructions, the trial court, as indicated, directed the jury "to determine whether the facts and circumstances shown by the evidence . . . warrant any inference which the law permits." That is compliant with the traditional definition of "corroborating evidence": "[e]vidence that differs from but strengthens or confirms what other evidence shows." Black's Law Dictionary 596 (8th ed. 2004). Further, the instructions specifically recognized the Defendant's constitutional right not to testify and emphasized that the burden of proof was on the State as to each and every element of the offense. That the jury was authorized, in its prerogative, to consider the propriety of the inference in the context of all of the evidence presented at trial in reaching their verdict was entirely appropriate.

## II. Sufficiency of the Evidence

Next, the Defendant complains that the trial court erred by failing to grant a judgment of acquittal as to the aggravated burglary charge at the conclusion of the State's proof-in-chief based upon the insufficiency of the evidence. Rule 29(b) of the Tennessee Rules of Criminal Procedure provides as follows:

> Grounds for Judgment of Acquittal – On defendant's motion or its own initiative, the [trial] court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the state rests or at the conclusion of all the evidence. Overturf v. State, 571 S.W.2d 837, 839 & n.2 (Tenn. 1978). At the point the motion is made, the trial court must favor the opponent of the motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence. Hill v. State, 470 S.W.2d 853, 858 (Tenn. Crim. App. 1971). When the motion for acquittal is made at the conclusion of the state's evidence and is not granted, "the defendant may offer evidence without having reserved the right to do so." Tenn. R. Crim. P. 29(c). The standard by which the trial court considers a motion for judgment of acquittal is identical to that which applies on appeal in determining the sufficiency of the

[13](...continued)
1989) (affirming the constitutionality of this pattern jury instruction); see also People v. McFarland, 376 P.2d 449, 452-53 (Cal. 1962) (approving generally of the inference); People v. Mosqueira, 12 Cal. App. 3d 1173, 1176 (2d Dist. 1970) (same). California judges are instructed to "delete any bracketed material which is not supported by the evidence." Cal. Jury Instructions–Crim 2.15, use note; see Anderson, 210 Cal. App. 3d at 423-25.

evidence. State v. Blanton, 926 S.W.2d 953, 957-58 & n.5 (Tenn. Crim. App. 1996); State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994).

In considering a sufficiency of the evidence question on appeal, we must afford the State the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it. State v. Hanson, 279 S.W.3d 265, 274 (Tenn. 2009) (quoting State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007)). "The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." Id. (quoting State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008)). The relevant question when the sufficiency of the evidence is challenged is whether a rational trier of fact, after having reviewed the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Tenn. R. App. P. 13(e). "The burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict lies with the criminal defendant, because the verdict of guilt removes the presumption of innocence and raises a presumption of guilt." State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009). "This standard is the same whether the conviction is based upon direct or circumstantial evidence." Id. (quoting Hanson, 279 S.W.3d at 275); State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

Where direct evidence is absent, a criminal offense may, of course, be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958). Our courts have traditionally ruled that before an accused may be convicted based upon circumstantial evidence alone, however, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt."[14] Id. at 613.

---

[14] The Crawford standard has long been applied in Tennessee to criminal cases in which the sufficiency of the circumstantial evidence supporting the conviction is at issue. It is worth noting, however, that the federal courts have rejected the notion "that the prosecution [i]s under an affirmative duty to rule out every hypothesis except that of guilt." Jackson, 443 U.S. at 326 (citing Holland v. United States, 348 U.S. 121, 139-40 (1954) ("The petitioners assail the refusal . . . to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt . . . but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.")); see, e.g., United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) ("It is not necessary that the evidence exclude every reasonable
(continued...)

This Court has cited with approval language from Wharton's Criminal Evidence:

> In the effort to guard against improper verdicts, it is commonly stated that in determining the sufficiency of circumstantial evidence, (1) all the essential facts must be consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; (2) the facts must exclude every other reasonable theory or hypothesis except that of guilt; and (3) the facts must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the accused is the one who committed the offense.

Smith v. State, 327 S.W.2d 308, 317 (Tenn. 1959) (quoting 3 Wharton's Criminal Evidence § 980 (12th ed. 1955)). How much weight to give circumstantial evidence and the extent to which such evidence is consistent with guilt or inconsistent with innocence are questions for the jury. Id. at 318; see also Pruitt, 460 S.W.2d at 391.

An individual "commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft, or assault." Tenn. Code Ann. § 39-14-402(a)(3) (2006). An "[a]ggravated burglary is burglary of a habitation." Tenn. Code Ann. § 39-14-403(a) (2006). A "habitation" is defined as "any structure . . . designed or adapted for the overnight accommodation of persons." Tenn. Code. Ann. § 39-14-401(1)(A) (2006).

The Defendant described the State's proof that he entered the residence of the victim as "nonexistent." He insists, therefore, that the trial court erred by failing to grant his motion for judgment of acquittal at the conclusion of the proof and argues that the burglary charge should not have been submitted to the jury. We will address not only whether the motion should have been granted but also whether the evidence was sufficient to support the aggravated burglary conviction.

On the side of the Defendant, no witness testified to having seen him at or near the victim's residence during the time period the burglary could have taken place. Of the items taken from inside the residence, only the car keys were found in his possession (while the vehicle, of course, was parked outside). No fingerprints were discovered. The State was

---

[14](...continued)
hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt."); United States v. Conti, 339 F.2d 10, 12-13 (6th Cir. 1964) ("[I]t is not necessary that circumstantial evidence be such as would remove every reasonable hypothesis except that of guilt.").

unable to produce a confession or any admission on the part of the Defendant as to any role in the burglary. There is further evidence consistent with the defense theory: that the Defendant used his real name, social security number, and address when applying for the loan, and that he drove the Toyota openly within the general area of the burglary until his arrest a week later.

Viewed in the light most favorable to the State, however, the evidence established that a residential burglary took place either late at night on July 2 or during the predawn hours of July 3, 2007. Although the cash and computer taken from the residence were never recovered, the cash was taken from the victim's pocketbook, where the keys to the Toyota were also located. During regular business hours on the day immediately following the night-time burglary, the Defendant had possession of the keys, the stolen Toyota, and the car title. He lied not only to the assistant manager at TitleMax in order to get a loan but also to an employee at the Hamilton County Clerk's Office when he applied for a title. He was also untruthful about the date of the claimed purchase, his relationship with the victim as a "family friend," and, inferentially, the identity and address of the co-signer on the loan documents. The name the co-signer provided to the loan officer was an individual known to the Defendant, and the co-signer was obviously not that individual. He was arrested within a mile of where the burglary took place. When first questioned by the police, he provided few details, and, later, when he testified at the preliminary hearing, the Defendant did not enhance the credibility of his explanation. Under these circumstances, particularly where the Defendant provided demonstrably false information to a loan officer and a county clerk within hours of the break-in, the trial judge properly denied the motion for judgment of acquittal as to the burglary charge and permitted the jury to consider the issues drawn.

Further, the jury, at the conclusion of the trial, acted within its prerogative by finding the Defendant guilty of theft, thereby rejecting altogether the Defendant's explanation to the police as to how he acquired the stolen vehicle. After finding the Defendant guilty of theft, the jury properly considered whether he could have acquired the vehicle only by participating in the burglary, taking into account the short period of time between the break-in of the victim's residence and the Defendant's possession of the vehicle and car keys, the implausibility of his explanation to the police, and his lack of truthfulness in acquiring the new title and loan. Ms. Williams' testimony was not helpful to the defense and served to confirm the Defendant's awareness of the falsity of his loan co-signor's identity. The jury is entitled to assess whether the facts and circumstances, however slight, corroborate the burglary and otherwise satisfy the standard required for conviction. When an explanation is given for the possession of recently stolen property, the truthfulness of the claim or the lack thereof is for the jury to determine. See, e.g., Adams v. State, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). False or conflicting explanations may serve as the corroboration necessary to support a conviction. See Pruitt, 460 S.W.2d at 392.

-18-

Each case, as suggested by the various authorities cited, must be assessed upon its own facts. Under these circumstances, the corroborative evidence connecting the Defendant to the aggravated burglary warranted the permissive inference from the recently stolen property.[15] In summary, there is a rational connection between the possession and the participation, guilt of burglary more likely than not stems from the possession, and the untruthfulness of the Defendant may serve as the corroborative evidence. The trial court did not err by denial of the motion for acquittal. Further, the evidence is sufficient to support the aggravated burglary conviction.

### III. Questions by Jurors

As his final issue, the Defendant contends that the trial court erred by reopening direct and cross-examination of Kathryn Williams after allowing the jury to formulate additional questions for her. The Defendant points out that until recently, the courts of this state had discouraged questions by jurors, describing the procedure as "a perilous practice which trial courts should scrupulously avoid." Branch v. State, 469 S.W.2d 533, 534 (Tenn. Crim. App. 1969); see also Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).

Rule 24.1(c) of the Tennessee Rules of Criminal Procedure, made effective July 1, 2003, and adopted after several years of study related to the role of jurors, changed that policy.[16] The rule provides as follows:

---

[15] In Cosby v. Jones, the Eleventh Circuit Court of Appeals described the test for the permissive inference as "whether it is rational to infer an element of the crime from a specific fact and related circumstances," and observed that there was a rational connection when "the ultimate fact is 'more likely than not to flow from' the basic fact." 682 F.2d at 1376 (quoting Ulster, 442 U.S. at 165). Further, the court described the inference test as a component part, but independent from, the test for sufficiency of the evidence set forth in Jackson v. Virginia, 443 U.S. at 324, which "tests whether such an inference is supported by the record as a whole." Cosby, 682 F.2d at 1376. "Therefore, determining that a permissive inference instruction is valid does not settle whether the verdict is supported by sufficient evidence." Id. at 1377. "[R]ecent possession of stolen goods will not automatically support a guilty verdict for theft or burglary . . . in every case. . . . [T]he Supreme Court has never squarely held that the inference standing alone will support a guilty verdict without the existence of corroborating evidence or circumstances." Id. at 1380.

By way of comparison, accomplice testimony, in order to support a conviction, must be corroborated by one or more independent facts substantiating not only the crime but also the guilt of the accused. State v. Fowler, 373 S.W.2d 460, 463 (Tenn. 1963). Only slight circumstances are required to furnish the necessary corroboration of accomplice testimony. Garton v. State, 332 S.W.2d 169, 175 (Tenn. 1960).

[16] An article by Neil P. Cohen includes reasons for the adoption of the relatively new rule:

Many courts throughout the country now permit jurors to question witnesses, a practice

(continued...)

In the court's discretion, the court may permit a juror to ask a question of a witness. The following procedures apply:

(1) Written Submission of Questions. – The juror shall put the question in writing and submit it to the judge through a court officer at the end of a witness' testimony. A juror's question shall be anonymous and the juror's name shall not be included in the question.

(2) Procedure After Submission. – The judge shall review all such questions and, outside the hearing of the jury, shall consult the parties about whether the question should be asked. The judge may ask the juror's question in whole or part and may change the wording of the question before asking it. The judge may permit counsel to ask the question in its original or amended form in whole or part.

Tenn. R. Crim. P. 24.1(c)(1)-(2).

The trial court, in recognition of the rule, charged the jury as follows:

If you have a question about the testimony of a witness, write it down and present it to a court officer at the end of the witness's testimony. The court officer will then present the question to me. After consultation with the

---

[16](...continued)
endorsed by the American Bar Association and utilized in some Tennessee trial courts for many years. The typical model requires jurors to submit questions in writing to the judge who reviews them and asks the parties to comment on the propriety of permitting the questions to be asked. If the judge deems a question to be appropriate, the judge personally may ask all or part of the question on behalf of the juror or may permit counsel to do so in whole or part. Jurors do not directly question the witness.

The practice of permitting jurors to ask questions has many advantages. These include making jurors active participants rather than passive observers, avoiding juror confusion or mistaken impressions or memories by clarifying testimony, and providing proof of relevant matters that the lawyers intentionally or unintentionally omitted. It may also provide counsel with feedback about issues of importance to the jury, allowing counsel to adjust the proof process to respond to the juror's concerns or confusion.

These advantages and the overwhelming approval of juror questions during Pilot Project trials, led to new Civil Rule 43A.03 and Criminal Rule 24.1(c), which give the trial judge the discretion to allow jurors to submit written questions . . . .

Neil P. Cohen, Better, Happier Juries, 39-JUN Tenn. B.J. 16, 22 (2003).

attorneys, I will decide whether the question may be asked of the witness.

See T.P.I.–Crim. 1.00 (12th ed. 2008). The trial court further said, "If you do have questions and you follow that instruction, I will have some additional instructions for you if that issue arises at any time. But you will have the opportunity to ask questions at the end of each witness's testimony."

At the conclusion of Detective Bryden's testimony, the jurors submitted written questions to the trial court, and, after a bench conference, the trial court asked the questions. A similar procedure was repeated at the conclusion of Kathryn Williams' testimony, with defense counsel asking the questions. Over the objection of the Defendant, the trial court permitted follow-up questions by counsel on each side. There were no follow-up questions of Detective Bryden; however, an assistant district attorney asked several questions of Ms. Williams. One of the questions from the jury was, "how often was [the Defendant] paid and what day of the week was he paid?" After her answer, the following exchange took place between the assistant district attorney and the witness:

> Q: [W]hat day of the week did he get paid?
> A: He usually got paid on a Friday, sometimes on a Thursday, just depends when their payroll came in.
> Q: You didn't discuss finances with him. How did you know when that occurred?
> A: Because I knew what day he got paid, just like he knew what day I got paid. How much he got paid and how much I got paid was something we didn't, we didn't ask each other.
> Q: The month of June, in the entire month of June right before this incident occurred, what [were] his work hours?
>
> . . .
>
> A: They usually worked Monday through Friday and sometimes on Saturdays. If the load was heavier, they had to go in on Saturday mornings, so –
> Q: During the month of June, how many days did he work?
> A: I would assume that he went to work every day. They would have to go to work and find out how much of the load they had to do, and then if it was a light load, then they didn't stay all day; if it was a . . . heavy load, they stayed all day, so I couldn't tell you.

The State was permitted to ask questions relating to the Defendant's finances, questions that the Defendant claims had not been asked during the original cross-examination. The

Defendant objects particularly to questions suggesting that he did not work five days per week. He argues that the trial court erred by allowing the State to use the question by the jury to re-open "a far reaching exploration of [his] finances."

In our view, the procedure implemented by the trial court was not erroneous. Generally, "the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." State v. Caughron, 855 S.W.2d 526, 540 (Tenn. 1993); State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). While direct questions of a witness by jurors have occasionally been viewed with disfavor, our courts have also observed that "each case must be judged on its own facts in determining whether error has been committed [by the practice]." Byrge, 575 S.W.2d at 295. In the Branch and Byrge cases, the jurors asked questions of a witness, but apparently without prior approval by the trial court as to either form or substance. Neither of these cases, however, resulted in a new trial on the ground that jurors should never be permitted to question a witness. Further, the 2003 rule, which was motivated by a desire "to assist jurors in their understanding of evidence and to make them feel more involved in the trial process," prescribes a procedure designed to eliminate the pitfalls of unscrutinized direct questioning. See Tenn. R. Crim. P. 24.1, advisory comm'n cmt. Prior approval by the trial court of form and substance is essential.

Although the Defendant did object to the procedure utilized by the trial court, no basis exists for either the exclusion of any specific question propounded by the State or any answer given by the witness – other than that the questions were not asked during the original cross-examination. Absent a clear abuse of the discretionary authority of the trial judge, one that manifestly prejudices the rights of a defendant, this Court will not find error. Moreover, assuming that follow-up questions by the State or the defense were not contemplated by Rule 24.1(c), the trial judge nevertheless has the discretion to permit a witness to be recalled for further questioning. State v. McAlister, 751 S.W.2d 436, 438 (Tenn. Crim. App. 1987) ("The recall of a witness to testify a second time is within the discretion of the trial judge."); Lillard v. State, 528 S.W.2d 207, 212 (Tenn. Crim. App. 1975) (observing that the trial judge has the discretion to allow a witness to testify a second time). In fact, this Court has empowered trial courts with the discretionary authority to permit the state to reopen its proof, so long as there is no prejudice to the defendant. See, e.g., State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981); White v. State, 497 S.W.2d 751, 754 (Tenn. Crim. App. 1973). In our view, the procedure utilized here by the trial court of allowing follow-up questions by the prosecution when the defense had the same opportunity does not qualify as an abuse of discretion.

**Conclusion**

The instruction provided by the trial court, which required the finding of facts and circumstances supportive of the permissive inference from the possession of recently stolen property as to burglary, was not erroneous. Because the evidence was sufficient to support a conviction of aggravated burglary, the trial court did not err by the denial of the motion to acquit. Finally, the trial court acted within its discretionary authority in establishing the procedure for juror questions. The judgment is, therefore, affirmed. It appearing that the appellant is indigent, costs of the appeal shall be taxed to the State.

_____
GARY R. WADE, JUSTICE