# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 26, 2011

## STATE OF TENNESSEE v. STEVEN Q. STANFORD

**Direct Appeal from the Criminal Court for Campbell County**
**No. 14163      E. Shayne Sexton, Judge**

**No. E2010-01917-CCA-R3-CD - Filed July 11, 2011**

The defendant, Steven Q. Stanford, was convicted by a Campbell County jury of one count of initiation of a process to manufacture methamphetamine, a Class B felony, and one count of possession of drug paraphernalia, a Class A misdemeanor. Following a sentencing hearing, the defendant was sentenced, as a Range III offender, to serve thirty years in the Department of Correction. On appeal, he raises the single issue of sufficiency of the evidence. Following review of the record, we find that the evidence presented at trial is sufficient to support the convictions, and we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Martha J. Yoakum, District Public Defender, and Charles Herman, Assistant Public Defender, for the appellant, Steven Q. Stanford.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William Paul Phillips, District Attorney General; and Scarlett W. Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

On April 21, 2009, the LaFollette Police Department received an alert regarding a reckless driver, who was possibly armed, driving a red Monte Carlo. Officer Pam Jarrett recognized the description of the vehicle and suspected that it belonged to the defendant. After verifying that it was the defendant's vehicle, she proceeded to travel to the address

where the defendant resided. When she traveled by the home, she noted that the defendant's vehicle was not there. At the same time, Officer Jason Marlowe was also on the lookout for the vehicle in the defendant's neighborhood. He eventually stopped the car about one hundred and fifty feet from the residence. The defendant and a female passenger were inside the vehicle. Once the defendant was removed from the car, he gave consent for the vehicle to be searched. Officer Marlow found a lithium battery, fully intact, inside the glove box of the car.

Meanwhile, Officer Jarrett, a trained methamphetamine technician, had also returned to the scene. She approached the house and encountered the defendant's brother, Tamra Rasnick, and David Allen. Officer Jarrett asked the group if anyone had been cooking methamphetamine, and they responded in the negative. She also asked for permission to search the home, which was given by Rasnick and Allen, who stated that they were staying at the house while they were repairing it. After entering the home, officers found nothing in plain view. However, when Officer Jarrett searched the outside perimeter of the home, she discovered a still smoldering burn pile.

Based upon her experience, the materials she saw in the burn pile appeared to be of the type used in the manufacture of methamphetamine. She discovered coffee filters, four bottles which were melted down, measuring cups, lithium strips, a Walden-D allergy congestion pill box, blister packs, and plastic bags. She testified that the used lithium strips were consistent with coming from the type of battery found in the defendant's car. Officer Jarrett was also able to determine that one of the plastic bottles had been used as a "gas generator," which is classified as drug paraphernalia, to make methamphetamine and that, based upon her training, the process began no more than twelve hours previously. In the area, she also found tubing which tested positive for methamphetamine. Finally, in the burn pile, she discovered an AT&T telephone bill addressed to the defendant at that location. All the people present were detained for questioning after the discovery.

Based upon that discovery, Officer Jarrett returned to the inside of the house. In the trash can, she found a container of Morton salt, pseudoephedrine blister packs, measuring utensils and cups, more coffee filters, and a Walgreen's receipt showing the purchase of the allergy medication. She also discovered Drano and a dismantled cold-pack, known to contain ammonia nitrate, both known ingredients in the manufacture of methamphetamine. According to the testimony of Officer Jarrett, based upon the presence of personal care items and of men's and women's clothing, it was apparent that people were living in the residence. She made clear in her testimony that it appeared that both of the residence's bedrooms were occupied. The defendant, Tamra Rasnick, and David Allen were arrested.

Subsequently, the three were indicted by a Campbell County grand jury for initiation

of a process to manufacture methamphetamine and for felony possession of drug paraphernalia. A joint trial was held in January 2010, at which Officers Jarrett and Marlowe testified to the above-mentioned facts. At the trial, a third officer testified that late on the night before this incident, he had taken a deputy to the residence because he knew that to be the address at which the defendant lived. When they approached the house, they were greeted by the defendant and a half-clothed female inside the residence.

In his defense, the defendant called his mother, Josie Carter, the owner of the house, to testify. She stated that the defendant was not, and had not been, living in the house despite the fact that the phone, water, and electric bills were in his name. Ms. Carter testified that she had hired the defendant, Rasnick, and Allen to repair the home, which had been empty since the renter moved out in February. She further testified that the burn pile had been there since February 17, 2009, and was used only to burn things left by the previous tenant. A neighbor was also called to testify and stated that she believed that the house was vacant, although she did acknowledge seeing the defendant working on the home on the previous day.

Based upon this evidence, the defendant was convicted of the initiation of a process to manufacture methamphetamine and the lesser offense of misdemeanor possession of drug paraphernalia. Following a sentencing hearing, the trial court imposed concurrent sentences of thirty years and eleven months and twenty-nine days for the respective convictions. Following the denial of his motion for new trial, the defendant filed this timely notice of appeal.

**Analysis**

On appeal, the defendant challenges only the sufficiency of the evidence with regard to his convictions. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith,* 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The defendant's argument that the evidence is insufficient to support his convictions centers around the fact that there was no direct evidence presented that he initiated a process to manufacture methamphetamine or that he possessed drug paraphernalia. He relies upon the testimony of his mother that he did not live in the house, as well as her testimony that the phone bill was only in his name so they would not have to use the neighbor's phone while working on the house. He contends that, based upon her testimony, the only evidence the State relies upon to establish that he lived at the residence was that he was there the night before this incident. However, he contends that his mere presence at the location prior to the date in question is not sufficient to show he initiated a process to manufacture methamphetamine or possessed any drug paraphernalia.

Initially, we must note that the defendant, in support of his argument, relies upon outdated law, namely that when the evidence was entirely circumstantial, there must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypothesis except that of guilt. *See State v. Crawford*, 470 S.W.2d 610 (Tenn. 1971). However, our supreme court, in the recent case of *State v. Dorantes*, made clear that this is no longer the law. *Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Instead, a reviewing court is now required to treat direct and circumstantial evidence the same when considering the legal sufficiency of the evidence, and the State is under no "affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt." *Id.*; *see also State v. James*, 315 S.W.3d 440, 455 n.4 (Tenn. 2010).

It is for the jury to determine what weight, if any, to ascribe to circumstantial evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily from the jury." *Id.* A reviewing court "may not substitute its inferences for those drawn by the trier of fact in circumstantial evidence cases." *Dorantes*, 331 S.W.3d at 380. The standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *Id.* at 379.

Following our review of the record in compliance with the above stated law, we

conclude that, in the light most favorable to the State, a rational trier of fact could have found the essential elements of both offenses in this case. Tennessee Code Annotated section 39-17-435 (2010) states, in relevant part, that:

(a)     It is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine.

(b)     It shall not be a defense to a violation of this section that the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed.

(c)     For purposes of this section, "initiates" means to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation.

Additionally, Tennessee Code Annotated section 39-17-425(a)(1) (2010) sets forth, in relevant part, that

it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

While we do agree that there was no direct evidence presented that the defendant committed these crimes, we disagree with his assertion that the circumstantial evidence which was presented is not sufficient to support the convictions. The proof presented was sufficient to allow a rational trier of fact to conclude that the process of manufacturing methamphetamine was, in fact, being done at the residence. The burn pile, as well as the trash cans inside the residence, contained materials which a juror could have reasonably concluded were precursors to manufacture methamphetamine based upon the expert testimony of Officer Jarrett. Indeed, the defendant does not contest that methamphetamine was being manufactured and that drug paraphernalia was possessed, his argument is simply that the proof did not show that he was the manufacturer or possessor. We disagree.

The proof presented established that the defendant was living in the house at the time of these crimes. Police officers testified that: they knew the defendant resided there; the

utilities were in his name; the home was occupied based upon the testimony of the officers regarding the contents of the home; the defendant and his half-clothed girlfriend were present there late on the previous evening; and it was to that home that the defendant was returning following the reckless driving incident. The only proof given that the defendant was not a resident of the home came from his mother and a neighbor who testified that the house was not occupied. However, this testimony was heard by the jury, who, by their verdict, clearly rejected it based upon a credibility determination. As has been noted numerous times, it is not the function of this court to reweigh credibility determinations made by the trier of fact.

In addition to establishing that the defendant resided at the home, the proof further established that the processing of the methamphetamine began no more than twelve hours prior to the officer's discovery of the burn pile. The proof established that the defendant was present during that time period, as he was seen there by two officers the previous evening. While we agree that his presence alone is insufficient to support the convictions, we must conclude that the totality of the circumstantial evidence presented, including the fact that a lithium battery was found in his car when he was stopped by police, was sufficient to allow a rationale juror to conclude beyond a reasonable doubt that the defendant was guilty of the crimes. He has failed to establish his entitlement to relief on this issue.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE