# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 19, 2013 Session

## STATE OF TENNESSEE v. MICHAEL WEBSTER

**Appeal from the Criminal Court for Davidson County**
**No. 2011-D-2944      Steve Dozier, Judge**

---

**No.  M2012-00713-CCA-R3-CD      Filed 06/05/2013**

---

The Defendant, Michael Webster, challenges his bench trial conviction for theft of property, over $500, a Class E felony, contending that there was insufficient evidence presented at trial to prove his knowing commission of the offense and that the value of the property exceeded $500.  After a review of the record and the applicable authorities, we conclude that the evidence was insufficient to prove that the property at issue exceeded $500, modify the conviction to theft of property, $500 or less, a Class A misdemeanor, and remand the case to the trial court for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified; Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Michael D. Rohling, Nashville, Tennessee, for the appellant, Michael Webster.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The record reflects that the Defendant was indicted on March 4, 2011, for theft of property, more than $500 but less than $1000.  His bench trial was held on October 27, 2011, and the following evidence was presented.

Emily Coakley testified that her home was burglarized sometime between February 25th and 26th in 2011 while she was away. After returning home, she discovered that her iPad, a watch, and a laptop that belonged to her sister were missing. She contacted the police and filed a report. Ms. Coakley testified that she received the iPad as a Christmas gift, and she believed it cost "around $500." The iPad was returned to her approximately one and a half months prior to trial in the same condition as it was when it was stolen. Ms. Coakley also stated that she had never seen the Defendant before and that she had never been to the McDonalds on Gallatin Road.

David Wynn, owner of the Hy's Pawn Shop on South Gallatin Road for twenty-six years, testified that the Defendant entered his pawn shop on March 4, 2011, with an iPad. After Mr. Wynn turned it on, he examined it to make sure that there were no viruses on it. Mr. Wynn testified, "[t]he particular model he had was sold for [$]499[. E]ven used[,] because . . . they were not very old[, t]hey were still bringing $400 to $425." He retrieved the $499 price from stores such as Wal-mart and Apple and stated that he knew the cost because he had recently purchased an iPad for his girlfriend. He then offered the Defendant $150 to purchase the iPad, and upon the Defendant's acceptance of this price, Mr. Wynn took the Defendant's driver's license and began the paperwork. Mr. Wynn testified that he asked the Defendant whether the iPad belonged to him and said, "this is so unique it will be identified quickly in case it's not." The Defendant told Mr. Wynn that the iPad belonged to him and signed the pawn ticket which contained the following language: "The pledger of this item attests that it is not stolen, it has no liens or encumbrances against it, and that the pledger has the right to sell or pawn the item and he's not in voluntary or involuntary bankruptcy." Mr. Wynn was later informed by law enforcement that the iPad was stolen and that the owner had the right to come pick the item up. Ms. Coakley retrieved the iPad sometime thereafter.

On cross-examination, Mr. Wynn testified that he had planned to price the iPad just below what it was listed for on eBay[1] and that would be "[$]3- [$]400 depending on what they're selling for because [he had] to take into account with the fees." Mr. Wynn also testified that the Defendant had valid identification and that he never appeared "overly nervous or in any way suspicious."

William Turbeville, a detective with the Metro Police Department, testified that he investigated Ms. Coakley's home burglary where an iPad, watch, and laptop were stolen. After inputting the iPad's serial number in the Davidson County pawn shop database, he learned that the Defendant had sold it to Hy's Pawn shop. He contacted the pawn shop to verify that the information he had learned was correct, instructed them to place the iPad on

---

[1]eBay is an internet site that allows consumers to buy and sell a variety of goods.

hold, and took out a theft warrant on the Defendant.

On cross-examination, Detective Turbeville admitted that Ms. Olivia Short was also charged with theft of the iPad but stated that someone else charged Ms. Short. He also admitted that law enforcement had not matched any fingerprints that were found in the house after the burglary.

Olivia Short testified on behalf of the Defendant. Ms. Short stated that she babysat for the Defendant and that she had asked him to pawn the iPad for her because she did not have a driver's license or any knowledge of pawn shops. According to Ms. Short, she found the iPad in a McDonalds on Gallatin Road while waiting on a friend. She played with the iPad for a few weeks and decided to pawn it because she needed the money. Ms. Short testified that she told the Defendant that she had received the iPad a few weeks prior as a birthday gift. She explained that, after asking her several times if the iPad was stolen, the Defendant agreed to pawn it for her. Ms. Short went with the Defendant to pawn the iPad, but she remained in the car. She testified that when the Defendant returned to the car, he gave her the $150 that he received for the iPad and that she offered him $20 for gas. After she learned that the Defendant had been charged with theft, she contacted the Defendant's lawyer, probation officer, and the detective about her involvement. Ms. Short explained, "I just tried to do the right thing. I knew it was my fault. . . . So, I wouldn't want anybody else to be in jail because of me[.]" Ms. Short admitted that she was recently charged with theft.

The Defendant testified in his own defense. He stated that he agreed to pawn the iPad for Ms. Short, his daughter's sitter, because "she didn't have no ID," and he trusted her because she got along with his daughter. He explained that he did not know what an iPad was and that he had never seen Ms. Short with the iPad before. The Defendant testified that he and Ms. Short went to the pawn shop together and that Ms. Short remained in the car while he went inside to pawn the iPad. The Defendant said that the pawn shop gave him $150 for the iPad and that he gave all the money to Ms. Short; although, she did offer him $20 to pay for gas. He stated that Ms. Short told him that the iPad belonged to her and that she gave him permission to pawn it. The Defendant stated, "[i]t is the truth. I mean, really, I mean, like I said, I wouldn't never never used my ID if I knew it was stolen. You know, it's -- it's nonsense. I mean, it would have been stupid, crazy if I knew it was stolen. I mean, ain't no way I would have did that."

On cross-examination, he said that he asked Ms. Short if the iPad was stolen two or three times; she insisted that it was not stolen and that it was a gift. The Defendant explained that he trusted her, even though he had only known her for a few weeks because she "babysitted [his] child." He admitted that he had the following prior convictions: two counts of theft of property, over $1,000; second degree burglary; burglary; four counts of robbery,

armed with a deadly weapon; two counts of simple robbery; larceny from a vehicle; assault with intent to commit robbery; and receiving stolen property. The Defendant also admitted that he was on parole when the instant incident occurred.

In issuing its findings, the trial court stated ". . . he exercised control over it. He had sole possession in the Hy's pawn shop. He jointly possessed it on the way, so he had possession. And he knowingly had that." The trial court stated that the Defendant's recent possession of the stolen property, unless satisfactorily explained, was a circumstance from which it could reasonably infer that the Defendant had knowledge that the property had been stolen. See State v. James, 315 S.W.3d 440, 450-51 (Tenn. 2010). After noting the Defendant's contention that he believed that the iPad belonged to Ms. Short, the trial court stated that the Defendant's explanation of his possession of the stolen property was insufficient to rebut the inference of guilty knowledge. The trial court explained,

> I mean, it doesn't make sense to me that [the Defendant's] . . . argument is, well, with my record I would never do something like that.

> But the reverse of that makes more sense to me. With his record, he would run as far away as he could from the circumstance. What is the circumstance? Well . . . a young girl; has no job, and is making -- the only money he's aware she's making is what little he pays on the few occasions that he's had her baby sit for him, . . . produces a new computer-like product that's in a case and says, will you pawn this for me.

> Well, and then he acknowledges; she, Ms. Short, as well, these suspicions that he had about that. That's when he should have run. Those suspicions were true. His gut feeling was correct. And his record bore that out. He's been through all of this. He's had possessions of stolen property. He's had burglaries. He's had robberies. He's had thefts.

> . . . .

> The inference language from circumstantial evidence talks about logical decisions that follow a disputed fact from circumstantial proof. The circumstance that presented it to him there on March the 4th of 2011 was, hmm, I've got a young girl that doesn't make much money, if any, other than what I pay her, that wants me to take her to a pawn shop and ponder this new looking computer device. I'm not sure what it is.

> I'm having nothing to do with it. Why? Because I know from my

record that people will do these kinds of things; take stolen stuff to pawn shops. And, you know, his honesty, I guess, from one point is the number of times he asked about whether it's stolen. Why is he asking if he doesn't think it is?

The trial court continued, "A lot of people go -- like I said, get involved in crimes use their own ID. . . . Well, that's stupid. Okay, does that mean he's not guilty? No. So I do find that the State has shown [the Defendant] guilty of theft of property."

Turning to the valuation of the property, the trial court stated,

Well, I mean, what is the value of this iPad to Ms. Coakley? And . . . what is the value to her or to a consumer to replace that particular iPad?

Well, the testimony is that they cost [$]499 according to Mr. Wynn; according to Ms. Coakley, she says, had it been her testimony, around [$]500. You know, maybe that wouldn't have been sufficiently beyond a reasonable doubt. Mr. Wynn says he's looked it up: Wal-mart, Apple store, the value's [$]499. He's sold them used for [$]4- to [$]425. Paid [$]300 or so for them. He was surprised that [the Defendant] took [$]150.

The trial court then concluded, "the fair market value of this particular property or the cost of replacing that particular piece of property would have been over $500. So I find [the Defendant] guilty of theft over $500." Sometime thereafter the trial court sentenced the Defendant to serve six years in the Department of Correction (DOC).

This appeal followed.


ANALYSIS

The Defendant contends that there was insufficient evidence presented at trial to prove (1) his knowing commission of the offense because Ms. Short testified that she committed the crime and that the Defendant did not know the property was stolen and (2) that the fair market value of the property exceeded $500, noting that sales tax should be excluded when calculating value. The State responds that the evidence is sufficient to sustain the Defendant's conviction (1) because the trial court, in its role as the trier of fact, determines the credibility of witnesses, and the record clearly illustrates that it found Ms. Short incredible and (2) because the trial court properly concluded that sales tax should be included in the calculation of value because buyers consider it in deciding whether to purchase an

item.

As a preliminary matter, we note that the State also asserted a waiver argument. However, despite the Defendant's failure to comply with Tennessee Rule of Appellate Procedure 27(a)(7)(B) and his scant complicity with Rule 10(b) of the Court of Criminal Appeals, in the interests of justice, we elect to address the Defendant's issues.

## A. Sufficiency of the Evidence

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). When assessing the sufficiency of the evidence following a conviction from a bench trial, "the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (citing State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978)). This court does not reweigh the evidence; rather, it presumes that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); see also State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility and the weight and value to be given to evidence were resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In Dorantes, our supreme court held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Therefore, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Under Tennessee law, a person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property

-6-

without the owner's effective consent. Tenn. Code Ann. § 39-14-103(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). To sustain the Defendant's Class E felony theft conviction, the State must prove the aforementioned and that the value of the property was over $500. Tenn. Code Ann. §§ 39-14-103(a), 39-14-105(2). Tennessee Code Annotated defines "value" as "(i) The fair market value of the property or service at the time and place of the offense; or (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A). The fair market value of property is a question of fact for the trier of fact. See State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981); see also, State v. Leverette, No. M2009-01286-CCA-R3-CD, 2010 WL 2943290, at *2 (Tenn. Crim. App. Jul. 26, 2010).

### 1. Determination of Guilt[2]

In finding the Defendant guilty of theft, the trial court stated, ". . . he exercised control over it. He had sole possession in the Hy's pawn shop. He jointly possessed it on the way, so he had possession. And he knowingly had that." The trial court properly noted that the Defendant's recent possession of the stolen property, unless satisfactorily explained, was a circumstance from which it could reasonably infer that the Defendant had knowledge that the property had been stolen. See State v. James, 315 S.W.3d 440, 450-51(Tenn. 2010). The trial court found that there were credibility issues with the Defendant's explanation of his possession of the stolen property, and as such, the inference of guilty knowledge was not rebutted. The Defendant used his driver's license to pawn the stolen iPad at issue only one week after the theft occurred. Although Ms. Short testified that she asked the Defendant to pawn the iPad and, in response to his inquiries, repeatedly told the Defendant that it was not stolen, the Defendant knew or should have known that the iPad was stolen because Ms. Short's only job was babysitting for him a few days a week, and he had not seen Ms. Short with the iPad previously. The trial court clearly found both the Defendant's and Ms. Short's testimony incredible, and we will not second guess that assessment on appeal. After our review of the record and the applicable authorities, we cannot conclude that the trial court's determination of guilt was in error.

### 2. Determination of iPad's Value

The trial court also found that the iPad's value, including tax, exceeded $500, concluding that "the fair market value of this particular property or the cost of replacing that

---

[2]To adequately address the issues presented, we will analyze the evidence supporting the Defendant's guilt as to his theft conviction and the value of the property stolen separately.

particular piece of property would have been over $500." Our supreme court has held that "[t]he market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense[.]" Hamm, 611 S.W.2d at 829; see also, Leverette, 2010 WL 2943290, at *2; State v. Pittman, No. W2009-02316-CCA-R3CD, 2011 WL 856382, at *3 (Tenn. Crim. App. Mar. 10, 2011); State v. Watts, No. W2010-00705-CCA-R3CD, 2011 WL 1220766, at *3 (Tenn. Crim. App. Mar. 31, 2011); State v. Tappan, No. W2006-00168-CCA-R3CD, 2007 WL 1556657, at *5 (Tenn. Crim. App. May 29, 2007). The record reflects that Ms. Coakley received the iPad as a gift, and she believed the iPad cost around $500. Additionally, Mr. Wynn testified that the iPad sold for $499, plus tax, in a new condition, and that used iPads sold for approximately $400 - $425. He had planned on re-selling the iPad for between $300 and $400, depending on the current market price. Given the aforementioned facts, we cannot conclude that sufficient evidence was presented to prove that the iPad's value exceeded $500.

As previously stated, Tennessee Code Annotated defines "value" as "(i) The fair market value of the property or service at the time and place of the offense; or (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A) (emphasis added). Because the item was at least two months old, thus classified as "used," its value would have depreciated from the original selling price of $499, plus tax. See generally, Tappan, 2007 WL 1556657, at *5 (concluding that information concerning the original purchase price, the original condition of the property, and the length of ownership, was relevant evidence from which the jury could determine the value of the stolen property). As such, the trial court's valuation of the iPad at $499 could only be based on the replacement value of the iPad and not on the estimate of its market value at the time of the offense. This was error because an item's replacement value is only a relevant inquiry when the fair market value cannot be ascertained, and the testimony at trial estimated that the fair market value was approximately $300 - $425; this amount would not exceed $500, even with tax included. Even drawing all inferences in favor of the State as required by Dorantes, there is no proof in the record that the used iPad was worth over $500. For the foregoing reasons, the Defendant's conviction is modified to theft of property, valued at $500 or less.

CONCLUSION

Based on our review of the record and the applicable law, we modify the conviction to theft of property, $500 or less, a Class A misdemeanor, and remand the case to the trial court for resentencing.

_____
D. KELLY THOMAS, JR., JUDGE

-8-