IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2024 Session

## STATE OF TENNESSEE v. JOHN EDWARD GRAHAM

**Appeal from the Criminal Court for Knox County**
**No. 120164    Steven Wayne Sword, Judge**

_____

### No. E2023-01066-CCA-R3-CD

_____

A Knox County jury convicted Defendant of Class E felony theft of property valued at more than $1,000 but less $2,500. Defendant claims that the evidence was insufficient to sustain the conviction and that the trial court erred in denying Defendant the right to enter relevant evidence. Following our review, we determine that the evidence was sufficient for the jury to find Defendant guilty and that the trial court properly excluded the evidence because it was not properly authenticated. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Daniel L. Bell, Knoxville, Tennessee, for the appellant, John Edward Graham.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Procedural History*

On December 17, 2020, a warrant was issued charging Defendant with "theft of truck parts, over the value of $1,000 but less than $2,500." The case was bound over to the grand jury on August 30, 2021. The Knox County Grand Jury returned an indictment on a single count of theft on December 1, 2021. Defendant was tried by jury on November 21, 2022.

Paula Mayes testified that she and her husband owned a 1997 Dodge Ram 2500 pickup truck ("the Ram 2500"). She bought the Ram 2500 at the estate auction of her late cousin in 2005. Her husband used the truck in his house moving business. She said that the Ram 2500 had a green and silver special-ordered factory paint scheme and detail striping that matched the camper mounted on the bed. In June 2019, she took the Ram 2500 to Tennessee College of Applied Technology on Liberty Street in Knoxville for the school's students to work on the transmission. After receiving a call from someone at the school in early December 2019, Ms. Mayes went to the college to look at the Ram 2500. She said multiple parts, including the hood, the grille, and the battery had been removed from the Ram 2500. While at the college, Ms. Mayes was shown a video recording taken by the college's security camera. Ms. Mayes said that the video showed "a white van coming in, pulling up to my truck, taking the parts off, sticking them in the van and the van driving off." Ms. Mayes said that the video was "real grainy" and that she could not identify anyone in the video. Ms. Mayes contacted the Knoxville Police Department ("KPD"). She prepared a list of the parts and made photographs of the Ram 2500. She obtained a $2,555.36 estimate from Jim Cogdill Dodge to replace the missing parts. The estimate for the hood alone was $1,095.00.

As a result of a telephone call from a student at the school, Ms. Mayes looked at a Facebook Marketplace page that had an ad for a Dodge truck for sale. She said that the truck in the picture was "small and red in color, but that it had her 'big old green hood on it.'" She called the telephone number listed in the Facebook ad and obtained permission to go to look at the truck on December 13, 2019. She and her stepson, Bradley Mayes, went to the address she had been provided by the Facebook seller, which turned out to be Defendant's home. She said that the hood was too big for the truck and was held in place by bungee cords. She said that Mr. Mayes asked Defendant where he got the hood because it did not match. Defendant said he bought the hood at "Pull A Part." Mr. Mayes told Defendant that the hood came from his dad's Ram 2500 and that they were going to call the police. Ms. Mayes contacted KPD. Several photographs of the Mayes' Ram 2500 and Defendant's Dodge Ram 1500 ("the Ram 1500") were introduced into evidence.

Bradley Mayes testified that he was very familiar with the Ram 2500 and that it had a very distinctive two-tone custom paint and pinstripe. He said that he was 100% certain that the hood on the Ram 1500 came off the Mayes's Ram 2500. He also said that he recognized an obvious dent in the hood and that the grille had scratch marks that matched the scratch marks on the hood of the Ram 2500. He said that the parts were stolen from the Ram 2500 around December 5 or 6, 2019. Mr. Mayes testified that Pull A Part did not purchase car parts from individuals but rather purchased entire vehicles and sold the parts.

KPD Officer Christopher Glenn Ott said that he was contacted by Ms. Mayes. Ms. Mayes sent him a picture of the Ram 2500 before the parts were removed and provided him with the web address for the Facebook Marketplace page, which had a picture of a truck for sale. Officer Ott said that the custom pinstripe on the hood can be seen in both pictures of the Ram 2500 and the Ram 1500. Officer Ott and his partner went to Defendant's house on December 17, 2019, and examined the Ram 1500. He said it was obvious that "the hood was not meant" for the Ram 1500. Officer Ott said that Defendant claimed he had a receipt from Pull A Part where he bought the hood but was unable to produce the receipt. Officer Ott stated that there were also two Kroger shopping carts in Defendant's garage. He told Defendant that he was in possession of stolen property and that he was going to do additional investigation, and he instructed Defendant not to sell the property.

Michelle Lamb testified that she had been romantically involved with Defendant for five years. She said Defendant had fixed up and sold one vehicle before he had started working on the Ram 1500. She said that the Ram 1500 was operational when he bought it but that it needed a hood, a radiator, and a few other parts. Defendant would buy parts from friends or parts stores. She said he purchased the hood in November or December 2019 from Jason Sutton. Mr. Sutton lived with Defendant and Ms. Lamb.

When police officers arrived to investigate, they first spoke to Mr. Sutton because he was outside. Mr. Sutton told Defendant to come outside because the police wanted to talk to him. Ms. Lamb said that the police left after speaking to Defendant, but they returned to arrest Defendant about a week later. She said Mr. Sutton gave Defendant a receipt after Defendant was arrested. Ms. Lamb never told the police that Defendant bought the hood from Mr. Sutton. She said that Defendant paid "about fifty bucks" for the hood and that she thought the hood came from Pull A Part because Mr. Sutton "used to go there all the time." Ms. Lamb admitted that she pled guilty to two counts of misdemeanor theft on July 9, 2013, and to one additional count of misdemeanor theft on July 24, 2013.

Defendant testified that he had been convicted "a few times of burglary." He said that his last conviction was for aggravated burglary in 2010 and that he "flattened [his] time out in 2017." He volunteered that he had been arrested once for misdemeanor possession of drugs since 2017. Defendant said that he traded a dirt bike for the Ram 1500 about two or three months before he was arrested and that he was fixing it up "a little bit at a time." He said that the Ram 1500 needed a water pump, a "freeze-out plug," and a hood. He stated that Mr. Sutton helped him fix the water pump and told him that he "might have a hood." He said that Mr. Sutton came back with a hood. Defendant said that, "after the police came[,]" he asked Mr. Sutton where he got the hood and that Mr. Sutton told him that "he bought it at Pull A Part and provided [Defendant] a receipt."

- 3 -

Defendant said that he had known Mr. Sutton since elementary school and that Mr. Sutton was living with him at the time of Defendant's arrest. Defendant said that he and Mr. Sutton "had a falling out, kind of, over this." He claimed that he had been trying to locate Mr. Sutton for a year and that he did not currently know the location of Mr. Sutton.

Defendant sought to introduce as evidence a receipt from Pull A Part issued to Mr. Sutton for a hood. Defendant claimed that Mr. Sutton gave him the receipt approximately a week after the police initially came to Defendant's house. The State objected to the introduction of the receipt on the grounds that it was not properly authenticated. Following a jury-out hearing, the trial court found that no business record custodian from Pull A Part was present to authenticate the receipt as a business record and that Mr. Sutton, whose name was on the receipt, was not present to testify. The court noted that the receipt said "June" 2019 and did not describe the hood. The court determined that the receipt was not properly authenticated and sustained the State's objection.[1]

Defendant denied that the officers told him not to sell the truck. He said they only "suggested" that he not sell the truck. He said that he sold the truck two days after the police initially came to his house because he needed money to buy Christmas presents for his children.

On cross-examination, Defendant agreed that he had been convicted of aggravated burglary on April 5, 2010, September 28, 2010, and December 6, 2013.

The jury found Defendant guilty of the charged offense.

### *Sentence*

Following a sentencing hearing, the trial court found that Defendant was a Range II multiple offender and sentenced him to four years, suspended to supervised probation after the service of sixty days in the county jail. The court ordered Defendant to pay $1,861.36 in restitution at the rate of $50.00 per month. The trial court denied Defendant's motion for new trial, and Defendant timely appealed.

### **Analysis**

Defendant claims that the evidence was insufficient to prove he committed theft of property, arguing that "the mere possession of allegedly stolen property is, in of itself, not enough to establish his guilt[.]" Defendant also submits that the trial court "erred in denying Defendant the right to enter relevant evidence at trial." The State claims that the

---

[1] The record on appeal does not contain a copy of the receipt.

evidence was sufficient to sustain the conviction and that the court did not abuse its discretion by excluding the unauthenticated receipt from the evidence at trial. We agree with the State.

### *Sufficiency of the Evidence*

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

A person commits theft of property "if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). In *State v. James*, 315 S.W.3d 440, 450-51 (Tenn. 2010), our supreme court discussed in the context of jury instructions that possession of recently stolen property permitted an inference of theft. Our supreme court noted that

> the inference of guilty knowledge permitted by the possession of recently stolen property predates our current theft of property statute . . . . There is no difference between the actual larceny and either receiving or concealing the stolen property. Thus, the inference of knowledge that the property was stolen from the possession of recently stolen property is particularly suited to our current statute, and, in our view, the instruction by the trial court was proper as to the theft.

- 5 -

*Id.* Accordingly, Defendant's argument that possession of stolen property does not permit an inference of guilt as to theft is not well-taken.

In addition, Defendant's possession of the stolen hood was not the only evidence the jury considered. Ms. Mayes testified that she purchased the Ram 2500 from the estate auction of her late cousin's property and that her husband used the Ram 2500 in his business. Ms. Mayes testified that she obtained an estimate of $2,555.36 to replace the missing parts, which showed that the hood was valued at $1,095. She testified that she did not give Defendant permission to remove parts from the Ram 2500. The evidence at trial also showed that a custom-painted hood that matched the paint scheme of the Ram 2500 was attached by bungee cords to Defendant's red Ram 1500. Two days after Officer Ott informed Defendant that the hood was stolen and instructed him not to sell the Ram 1500, Defendant, nevertheless, sold the Ram 1500. We note that Defendant and Ms. Lamb testified about Defendant's having bought the hood from Mr. Sutton, but based upon its verdict, the jury clearly discredited this testimony. The evidence was sufficient for the jury to find beyond a reasonable doubt that Defendant was guilty of theft of property valued at more than $1,000 but less than $2,500. Defendant is not entitled to relief on this basis.

### *Admissibility of the Receipt from Pull A Part*

When a trial court makes an evidentiary ruling, the appropriate standard of review on direct appeal is "whether the record clearly demonstrates that the trial court abused its discretion in ruling the evidence inadmissible." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019) (citing *Regions Bank v. Thomas*, 532 S.W.3d 330, 336 (Tenn. 2017); *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015)). In *McCaleb*, our supreme court explained:

> We emphasize that the abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court. *State v. Harbison*, 539 S.W.3d 149, 159 (Tenn. 2018). Rather, "[b]ecause, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). Accordingly, if the reviewing court determines that "reasonable minds can disagree with the propriety of the decision," the decision should be affirmed. *Harbison*, 539 S.W.3d at 159.

*Id.* A trial court abuses its discretion when it "applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Plyant*, 263 S.W.3d 854, 870 (Tenn. 2008) (citing *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

In order for evidence to be admissible, it must be relevant. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." Tenn. R. Evid. 401.

Rule 901 of the Tennessee Rules of Evidence states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Authentication can be accomplished through testimony of a witness with knowledge "that a matter is what it is claimed to be." *See id*. 901(b)(1). "Once this foundation has been established, the 'trier of fact then makes the ultimate decision of whether the item is actually what it purports to be.'" *State v. Adkins*, No. M2009-00528-CCA-R3-CD, 2010 WL 3489170, at *2 (Tenn. Crim. App. Aug. 25, 2010), *perm. app. denied* (Tenn. Jan 13, 2011) (quoting Neil P. Cohen et al., *Tennessee Law of Evidence* § 9.01[2][a] (5th ed. 2005)). "Section (a) makes the trial judge the arbiter of authentication issues[.]" Tenn. R. Evid. 901, Advisory Commission Cmts.; *see also State v. Mickens*, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003).

The alleged receipt from Pull A Part was issued to Mr. Sutton, not to Defendant. Mr. Sutton did not testify at trial. The receipt was not authenticated as a business record. The receipt is not self-authenticating under Tennessee Rule of Evidence 902. The receipt did not describe the characteristics of the hood sold and was dated in June 2019, approximately six months before the hood was removed from the Ram 2500. The trial court found that the receipt was not properly authenticated and acted well within its discretion when it granted the State's motion to exclude the receipt from evidence. We note that the trial court permitted Ms. Lamb and Defendant to testify about the receipt and that the jury rejected Defendant's assertion that he legitimately purchased the hood. Accordingly, even if the receipt had been erroneously excluded, the error would have been harmless. Defendant is not entitled to relief on this basis.

## Conclusion

The evidence is sufficient to support Defendant's conviction, and the trial court properly excluded the receipt from evidence. The judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 7 -